UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KARI MONTANUS,

                            Plaintiff,

            -v-

COLUMBIA MANAGEMENT INVESTMENT
ADVISERS, LLC d/b/a COLUMBIA THREADNEEDLE
INVESTMENTS,

                            Defendant.

25 Civ. 2798 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Kari Montanus moves for reconsideration—or, alternatively, certification of an interlocutory appeal—of the Court's recent decision granting a motion to compel arbitration. That motion was made by Montanus's employer, defendant Columbia Management Investment Advisors, LLC, d/b/a Columbia Threadneedle Investments ("Columbia"). For the following reasons, the Court denies Montanus's motions.

**I.    Background**

    The Court assumes familiarity with this case. Montanus has been employed by Columbia for more than 20 years. She brings six claims of gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 *et seq.* ("NYCHRL"). Dkt. 1 ("Complaint" or "Compl.").

On June 3, 2025, Columbia moved to compel arbitration pursuant to its valid arbitration agreement with Montanus, Dkt. 8, filing a memorandum of law, Dkt. 9 ("Def. Br.") and declaration, Dkt. 10, in support. On June 25, 2025, Montanus opposed, arguing that her claims fell under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA" or "Act"), 9 U.S.C. §§ 401–02. Dkt. 15 ("Pl. Br."), which exempts from arbitration disputes relating to sexual harassment and assault that accrued on or after March 3, 2022. On July 21, 2025, Columbia replied. Dkt. 19. On September 2, 2025, the Court granted the motion to compel arbitration. Dkt. 20 ("Decision") at 1.

On September 16, 2025, Montanus moved for reconsideration, Dkt. 21 ("Mot."), or certification for interlocutory appeal of the Decision, Dkt. 23 ("Mot. for Interlocutory Cert."). On October 15, 2025, Columbia opposed. Dkt. 29 ("Opp'n"); Dkt. 30 ("Opp'n to Interlocutory Cert."). On October 29, 2025, Montanus replied. Dkts. 33–34.

## II.  Applicable Legal Standards

### A.  Reconsideration Under Federal Rule of Civil Procedure 60(b) and Local Rule 6.3

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such a motion is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up). Put differently, the purpose is not "[to] reargue those issues already considered when a party does not like the way the original motion was resolved." *S.E.C. v. Neto*, 27 F. Supp. 3d 434, 439 (S.D.N.Y. 2014)

(quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011)). Reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

### B.   Interlocutory Appeal Under 28 U.S.C. § 1292(b)

Certification for interlocutory appeal requires the moving party to show that an order or decision (1) "involves a controlling question of law," as to which (2) "there is substantial ground for difference of opinion," and (3) that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 391 (S.D.N.Y. 2019) (quoting 28 U.S.C. § 1292(b)); *see also Zivkovic v. Laura Christy LLC*, 137 F.4th 73, 80 (2d Cir. 2025) (same). Given the historic federal policy against piecemeal appeals, the Second Circuit has held that such certifications should be "strictly limited," and awarded only where "exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012) (quoting *Flor v. BOT Fin. Corp.*, 79 F.3d 281, 284 (2d Cir. 1996)), *aff'd*, 712 F.3d 136 (2d Cir. 2013); *see also Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8–10 (1980). "Even where the three legislative criteria of Section 1292(b) appear to be met, district courts retain unfettered discretion to deny certification if other factors counsel against it." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (cleaned up).

### III. Discussion

In urging reconsideration, Montanus argues that the Decision: (1) overlooked complaints that Montanus made after the effective date of the EFAA, which, she contends, related back to earlier complaints of hers that plausibly alleged sexual harassment and (2) improperly held that "sexualized content" is required for conduct to constitute sexual harassment. Mot. at 6. In urging certification for interlocutory review, Montanus argues that the Court should certify for appeal the component of the Decision purportedly requiring that a plaintiff who pleads "sexual harassment" must allege "'sexualized' content post-dating the EFAA's passage to trigger" that Act. Mot. for Interlocutory Cert. at 3.

#### A. Reconsideration

##### 1. The Court Considered Montanus's Allegations of Post-EFAA Conduct

Montanus argues that the Court erred by failing to consider the extent of her complaints that post-dated the EFAA, enacted in March 2022. The Court, she acknowledges, addressed the complaints she made before 2018, when she was transferred from the team on which her allegedly harassing supervisor, Richard Rosen worked. Mot. at 11–12. But, she claims, the Court overlooked complaints she filed between 2021 and 2024. *Id.* at 6, 8 n.2. Montanus argues that these "relate to" her pre-2018 complaints, which the Court had found "plausibly" alleged sexual harassment, and therefore bring her claims within the EFAA. *Id.* at 9. Montanus argues that on multiple occasions—"including in February 2022, November 2022, December 2022, June 2023, and September 2023"—she recounted "instances of her complaining about the 2003-2018 harassing conduct." *Id.* at 7. Columbia responds that the Court correctly held that Montanus's complaints after March 2022 do not constitute sexual harassment under the EFAA. Opp'n at 7–10.

Montanus's Motion reprises arguments she made in unsuccessfully opposing the motion to compel arbitration. *Compare* Pl. Br. at 23–26 *with* Mot. 7–11. There, Montanus had argued that she had been ridiculed for making protected complaints in February 2022, November 2022, December 2022, March 2023, June 2023, July 2023, and September 2023. Pl. Br. at 12–13. These are the complaints that Montanus now argues that the Decision overlooked. Mot. at 7. Montanus cast those complaints as implicitly alleging that Rosen's harassing behavior had continued after the EFAA's effective date. Pl. Br. at 12, 15–27 ("Given the *full context* of Rosen's patterns of vindictive and threatening behavior, his retaliatory post-March 2022 conduct could have reasonably deterred Montanus from engaging in further protected activity," *id.* at 21 (emphasis added)).

Contrary to Montanus's assertion that the Decision ignored this theory, Mot. at 7–9, the Decision exhaustively considered Montanus's post-2018 (and post-EFAA) complaints and the arguments she now makes. The Decision considered a sexualized joke Rosen made in November 2023; Montanus's complaints "[b]etween 2021 and 2024"; and, in particular, her complaints of February 2022, November 2022, June 2023, and September 2023. Decision at 8 (citing Compl. ¶¶ 240, 243, 246).

Under Federal Rule of Civil Procedure 60(b), reconsideration is not merited "unless the moving party can point to . . . data that the court overlooked." *Analytical Surveys, Inc.*, 684 F.3d at 52 (quoting *Shrader*, 70 F.3d at 257); *see also Massop v. U.S. Postal Serv.*, 493 F. App'x 231, 232 (2d Cir. 2012) (summary order) (denying motion for reconsideration where plaintiff did not identify "data th[e court] overlooked" in suit against U.S. Postal Service); *Montague v. City of Rochester*, 2022 WL 16558154, at *1 (2d Cir. Nov. 1, 2022) (summary order) (rejecting motion for reconsideration that "merely reprised arguments already considered

5

and rejected"). Montanus is at liberty to disagree with the analysis in the Decision. But she has not identified "data"—or arguments—that the Court overlooked, let alone ones that would reasonably be expected to "alter the conclusion reached by the [C]ourt." *Shrader*, 70 F.3d at 257. Relief under Rule 60(b) is thus unwarranted.

In any event, on the merits, the Decision properly applied "controlling law" in finding the conduct covered by Montanus's post-EFAA complaints "not 'similar in kind' to the pre-EFAA conduct" from before 2018 that Montanus had fairly termed sexual harassment. Decision at 12–13 (quoting *Clay v. FGO Logistics*, 751 F. Supp. 3d 3, 17 (D. Conn. 2024)). A careful examination of Montanus' complaints of February 2022, November 2022, December 2022, March 2023, June 2023, July 2023, and September 2023 reveals that each had principally made claims of gender discrimination. But that subject is outside the scope of the EFAA. Compl. ¶¶ 240–47 (noting Rosen's "hostility toward [Montanus] as a woman," his "demeaning remarks about women," lack of support for "women," and the succession plan for Rosen's team). These claims had been made four years after the alleged sexual harassment and were of a "different nature." Decision at 13. And, by 2018, Montanus was no longer reporting to Rosen, her office was physically distant from his, and her dealings and disputes with Columbia administrators generally concerned different matters. Compl. ¶¶ 180–184, 224–55. On this basis, the Decision, applying Second Circuit precedent, rejected Montanus's claim of a pattern of continuing violations extending after the EFAA's effective date. *See* Decision at 15–16; *see also Oliveri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 87–88 (2d Cir. 2024); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011); *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019).

Montanus is also wrong to conjecture that backward-looking references by supervisors after the EFAA's effective date were references to her earlier complaints of sexual harassment. Her Complaint quotes, for example, a supervisor who faulted Montanus for "rehash[ing] the past." Compl. ¶ 241. But, without more, it is not persuasive that that generalized locution referenced her much-earlier complaints about sexual harassment by Rosen. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 580–88 (S.D.N.Y. 2023). To the contrary, as the Decision explained, that statement, read in context, more likely referred to Montanus's recent grievances about the Columbia workplace, which did not concern sexual harassment. Decision at 13–15. Montanus acknowledges that the "ongoing hostile environment was . . . not limited to just Rosen's conduct." Pl. Br. at 11. And her Complaint described the February 2022 meeting at which the supervisor made that remark as concerning her "2021 compensation," and states that her supervisors brushed away discrimination concerns "before [she] even mentioned Rosen." Compl. ¶ 241. The Motion's assertion—that Montanus's supervisor's comments about "rehash[ing] the past" were an allusion to Rosen's sexual harassment—is thus conclusory. *See also id.* ¶¶ 184, 235–36 (noting Montanus's more recent complaints of "gender bias and harassment in the workplace" to which the same supervisor had previously reacted negatively).

Reconsideration on this point is therefore unwarranted. The Court's Decision considered Montanus's complaints after the EFAA's effective date but found that they did not concern sexual harassment or assault and thus did not trigger the EFAA. *See Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 545–46 (S.D.N.Y. 2024) (under EFAA, "sexual harassment is distinguished from discrimination on the basis of sex more generally because it involves either a quid pro quo or a hostile work environment based on sex," *id.* at 545); *Smith v. Meta Platforms, Inc.*, No. 24 Civ. 4633, 2025 WL 2782484, at *8 (S.D.N.Y. Sept. 30, 2025) ("regardless of the

7

source of law, sexual harassment must be sexual in nature"); *Castillo v. Altice USA, Inc.*, 698 F. Supp. 3d 652, 656–57 (S.D.N.Y. 2023) (same); *Menos v. Uncle Nearest, Inc.*, 2025 WL 917347, at *9–11 (E.D.N.Y. Mar. 25, 2025) (same); *Smith v. Boehringer Ingelheim Pharms., LLC*, 2025 WL 2403042, at *6–9 (D. Conn. Aug. 19, 2025) (same).

### 2. The Court Properly Applied Controlling Law in Finding Montanus's Post-EFAA Allegations Did Not Constitute "Sexual Harassment" Under the NYCHRL

Montanus separately seeks reconsideration on the ground that the conduct alleged in her Complaint that post-dates the EFAA's effective date constitutes sexual harassment under the NYCHRL and NYSRL. Mot. at 13–15. She depicts the Decision as wrongly concluding that sexual harassment under these laws must have a "sexualized" dimension. *Id.* Columbia counters that the Decision properly found Montanus's allegations to concern gender discrimination, not sexual harassment, and thus did not implicate the EFAA. Opp'n at 7–8. Columbia defends the Decision as fairly synopsizing sexual harassment case law and not overlooking a matter of "controlling law." *Id.* at 11–17.

This aspect of the Motion again recycles arguments already resolved. The parties extensively briefed whether the post-EFAA conduct that Montanus alleged made out a plausible claim of "sexual harassment." Def. Br. at 15–20; Pl. Br. at 21–29. Montanus argued that "[t]o state a sexual harassment claim under the NYCHRL and NYSHRL" she need only demonstrate "she has been treated less well than other employees because of her gender." Pl. Br. at 21. These arguments conveyed her position that, under those statutes, no more was needed to make out a sexual harassment claim. *Id.* at 21–22.

The Decision rejected Montanus's contention that the post-EFAA conduct cited in her Complaint constituted sexual harassment. This conduct was focused on incidents alleged to have

8

occurred between June 2022 and November 2024. Mot. at 15–17. These included that in June 2022, Rosen refused to look at her during a meeting; in July 2022, Rosen loudly told a subordinate he should move his desk away from Montanus's office; in December 2022, a male portfolio manager joked that Montanus did a "great job, for a rookie" despite her decades of experience; in January 2023, Rosen left a videoconference meeting after Montanus began speaking; in March 2023, Rosen again told the same subordinate he should move his desk away from Montanus's office; in November 2023, Rosen joked about a friend of his father's "g[etting] laid" while standing next to Montanus's office; in December 2023, Rosen celebrated Amy Fisher's shooting Mary Joe Buttafuoco; and in November 2024, male colleagues joked, in front of Montanus, that Rosen should be brought back as a "motivational speaker." Compl. ¶¶ 216–231.

Drawing upon case authority in the Second Circuit and this District, the Decision properly applied controlling law to find that these complaints alleged gender discrimination, outside the scope of the EFAA. Decision at 11–16. The Decision noted that the EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* at 9 (quoting 9 U.S.C. § 401(4)). And, it noted that, under the NYCHRL—the broadest relevant statute—"gender discrimination" and "sexual harassment" are not coextensive. *See id.* at 14 (citing *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 258–60 (S.D.N.Y. 2024), *reconsideration denied*, No. 23 Civ. 9502, 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024)). Rosen's alleged conduct towards Montanus—which principally alleged that he had refused to speak or attend meetings with her—did not entail conduct constituting sexual harassment under the NYCHRL. And the one sexually-tinged joke Rosen is alleged to have made during this period was neither directed to Montanus nor made in

9

her immediate presence. Compl. ¶ 226 (Rosen was not in, but rather in the vicinity of, Montanus's office and talking to another portfolio manager when he joked about a friend of his father's "g[etting] laid"). Montanus's case thus aligns with *Singh*, in which Judge Oetken found the NYCHRL, and thus the EFAA, had not been triggered by a female employee's allegations that her supervisors had marginalized her professional contributions, withheld her promotion, and terminated her employment at the end of her maternity leave. *Singh*, 750 F. Supp. 3d at 257. It was in context of describing *Singh*—which noted that the employee's allegations had not been of a "romantic, sexual, or lewd nature," *id.*—and like cases that the Decision used the term "sexualized" to synopsize what is required for a claim to allege sexual harassment. Decision at 14. As *Singh* observed, the conduct alleged in that case "surely constitute[s] gender discrimination . . . . [b]ut not all gender discrimination is sexual harassment." *Singh*, 750 F. Supp. 3d at 258. The Decision canvassed other like cases within the Circuit finding the EFAA not to apply. *See* Decision at 13–15 (citing *Puris v. TikTok Inc.*, No. 24 Civ. 944, 2025 WL 343905, at *5 (S.D.N.Y. Jan. 30, 2025); *Baldwin v. TMPL Lexington LLC*, No. 23 Civ. 9899 (PAE), 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024)); *Smith*, 2025 WL 2403042, at *9).

*Owens v. PricewaterhouseCoopers LLC* does not support a different outcome in this case. 786 F. Supp. 3d 831 (S.D.N.Y. 2025). There, Judge Woods noted that the NYCHRL contains a single relevant cause of action, which broadly makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment," N.Y.C. Admin. Code § 8-107(1)(a)(3), and thus does not differentiate between gender discrimination and sexual harassment. *Owens*. 786 F. Supp. 3d at 843 (alteration in original). Accordingly, Judge Woods noted, in applying the EFAA to claims under the

10

NYCHRL, it is necessary to differentiate between those claims that sound in gender discrimination and those that sound in sexual harassment. To do so, Judge Woods applied guidance from the New York City Commission on Human Rights, which defines sexual harassment as "unwelcome verbal or physical behavior based on a person's gender," regardless of whether lewd or sexual in nature. *Id.* at 845. That definition is broader than that used in *Singh*, which required conduct to be of a "romantic, sexual, or lewd nature" to constitute sexual harassment under the NYCHRL. 750 F. Supp. 3d at 257. But *Owens* rejected the reading Montanus pushes here: that *any* conduct violating the NYCHRL, which requires only that a plaintiff have been "treated less well than other employees because of [ ] gender," 786 F. Supp. 3d at 847 (citation omitted), constitutes sexual harassment. And the post-EFAA conduct that Montanus alleges is even farther afield from that which even *Owens* held *not* to constitute sexual harassment under the NYCHRL. Judge Woods there held that the comments of two supervisors to the effect that "women should not be partners" and are "terrible" partners were "not adequately pleaded to be conduct constituting sexual harassment" even under the "lower bar outlined by" that court. *Id.* at 843, 849. In any event, *Owens* is not "controlling law" here.[1]

Montanus otherwise largely recycles the same authorities she earlier cited to this Court. *Compare* Mot. at 13–14 *with* Pl. Br. at 1–19. None of these, or the four district cases that she newly cites, support that conduct of the sort that Montanus alleges here would constitute *sexual harassment* within the meaning of the NYCHRL.[2]

---

[1] To the extent *Owens* held that the conduct alleged did meet the NYCHRL standard, thus triggering the EFAA, that holding is being challenged in a pending appeal before the Second Circuit. *See Owens v. PriceWaterhouseCoopers LLC*, No. 25-1717 (2d Cir. 2025).

[2] The four newly cited cases are: *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 453 (S.D.N.Y. 2024); *Brazzano v. Thompson Hine LLP*, 24 Civ. 1420, 2025 WL 963114, at *2, *7–8 (S.D.N.Y. Mar. 31, 2025); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183–84

11

Montanus thus falls far short of meeting the "strict" standard necessary to grant a motion for reconsideration. She has not pointed to controlling decisions that might reasonably be expected to alter the conclusion the Court earlier reached. *See Wallace v. Grp. Long Term Disability Plan For Emps. of TDAmertrade Holding Corp.*, No. 13 Civ. 6759, 2015 WL 4750763, at *4 (S.D.N.Y. Aug. 11, 2015) (denying motion for reconsideration where plaintiff offered single district court and four out-of-circuit cases none of which was "controlling"); *360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19 Civ. 8760, 2022 WL 4086829, at *1 (S.D.N.Y. Sept. 6, 2022) (denying motion for reconsideration where moving party did not identify any change of controlling law); *Jimenez v. City of New York*, 166 F. Supp. 3d 426, 428–30 (S.D.N.Y. 2016) (same).

### 3. Overall Assessment

In sum, Montanus's motion for reconsideration repeats "old arguments previously rejected." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). The Court therefore denies it. *See, e.g., Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Sjunde AP-Fonden v. Gen. Elec. Co.*, 722 F. Supp. 3d 347, 351–52 (S.D.N.Y. 2024) (denying reconsideration where movant repeated rejected arguments); *Goonan v. Fed. Rsrv. Bank of N.Y.*, No. 12 Civ. 3859, 2013 WL 1386933, at *2–3 (S.D.N.Y. Apr. 5, 2013) (same).

---

(S.D.N.Y. 2023); and *Espinoza v. CGJC Holdings, LLC*, No. 23 Civ. 9133, 2025 WL 2430672 (S.D.N.Y. Aug. 22, 2025). Apart from being easily factually distinguished, none bind this Court. *See United States v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982) (district court decision is not binding on any other district court).

### B. Interlocutory Appeal

Montanus alternatively moves for certification for interlocutory appeal of this question: "[m]ust a plaintiff pleading 'sexual harassment' include 'sexualized' content post-dating the EFAA's passage to trigger the EFAA?" Mot. for Interlocutory Cert. at 3. That motion is meritless.

To the extent Montanus means to raise a question implicating continuing violations under the EFAA, this Court's decision is consonant with Second Circuit case law, under which hostile work environment claims "accrue" or "re-accrue" with each successive act, such that a post-EFAA act may bring a course of conduct that began before the Act's effective date within its coverage. *See Oliveri*, 112 F.4th at 87–89. Montanus' obstacle in invoking that line of doctrine here is factual: her pleadings do not allege conduct constituting sexual harassment after the Act's effective date, such that there is no continuing violation alleged.

To the extent that Montanus means to raise a question as to whether a claim under the NYCHRL qualifies as one of sexual harassment so as to trigger the EFAA, Montanus' case does not implicate that unresolved issue in the case law, reflected in the different approaches taken in *Singh* and *Owens*, *supra*. That is because, even if such conduct need not be "sexualized" to so qualify, Montanus's claims, which sound only in gender discrimination, would still fall short under the more lenient standard set out in *Owens*. And Montanus does not identify any decision of the Second Circuit that conflicts with this Court's application of the NYHCRL to her claims.

Montanus's proposed question, therefore, does not involve a controlling question of law, on which there is substantial ground for difference of opinion, and which would materially

advance the ultimate termination of litigation.³  The Court accordingly denies Montanus's bid to certify the Decision for interlocutory appeal.  *See, e.g.*, *In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, No. 22 Civ. 8830, 2023 WL 4976589, at *4 (S.D.N.Y. Aug. 3, 2023) (denying interlocutory appeal where decision applied controlling precedent); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461, 2014 WL 5002090, at *1–2 (S.D.N.Y. Oct. 7, 2014) (same).

## CONCLUSION

For the above reasons, the Court denies Montanus's motions for reconsideration and certification for interlocutory appeal.

The Clerk of the Court is respectfully directed to terminate the motions pending at dockets 21 and 23.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: December 22, 2025
New York, New York

---

³ To the extent the resolution of an open question regarding the interplay between the EFAA and NYLL would provide productive guidance to district courts hearing future cases, certification here would add nothing to *Owens*, which certified for appeal the question whether "the district court err[ed] in concluding that the [EFAA] precludes arbitration of all [p]laintiff's claims?" Dkt. 24.  And Appellant's brief in *Owens* squarely presents the question that Montanus chiefly advances here: that "Did the district court err in concluding that such allegations amount to 'sexual harassment' on the theory that sexual harassment does not require 'behavior [that] is lewd or sexual in nature'?" *Owens v. PriceWaterhouseCoopers LLC*, No. 25-1717 (2d Cir. 2025), Dkt. 30.1 at 16.